UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW WILLIAMS,

                    Plaintiff,

           -against-

E. NOVOA, ORC, et al.,

                   Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-11545 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Andrew Williams ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against a number of employees from the New York State Department of Corrections and Community Supervision ("DOCCS") in connection with his delayed release from incarceration in December 2016.

Plaintiff filed his initial Complaint on December 13, 2019 (Doc. 2) and an Amended Complaint on May 21, 2020 (Doc. 14, "Am. Compl."). Read broadly, the Amended Complaint presses claims for the following constitutional violations: (1) cruel and unusual punishment, in violation of the Eighth Amendment; (2) denial of due process, in violation of the Fourteenth Amendment; (3) denial of equal protection, also in violation of the Fourteenth Amendment; and (4) retaliation, in violation of the First Amendment. (*See generally* Am. Compl.).[1]  The Amended Complaint names the following Defendants: (1) E. Novoa ("Novoa"), an Offender Rehabilitation Coordinator ("ORC"); (2) F. Foster ("Foster"), another ORC; (3) Paul Essex ("Essex"), the ORC Supervisor; (4) R. Watkins ("Watkins"), his Parole Officer; (5) the New York State Board of Examiners for Sex Offenders ("Board"); (6) Steve Whitbeck ("Whitbeck"), Chairman of the Board; (7) Dawn Amsler ("Amsler"), a Board employee; (8) Edwin Elffied ("Elffied"), a Board

---

[1] Citations to the Amended Complaint correspond to the pagination generated by ECF.

employee; (9) Mark Osborne ("Osborne"), a Board employee; and (10) Stephen Webster ("Webster"), a Board employee. (*Id.* at 1-4; *see also* Doc. 18, "Ord. of Serv."). As of the date of this Memorandum Opinion and Order only Novoa and Essex (together, the "Served Defendants") have appeared in this action.[2]

The Served Defendants moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 7, 2020. (Doc. 20; Doc. 21, "Def. Br."). Plaintiff opposed the motion on October 14, 2020 (Doc. 27, "Opp. Br.")[3], and the motion was briefed fully with the filing of the Served Defendants' reply brief on October 27, 2020 (Doc. 28, "Reply Br.").

For the reasons set forth below, the Served Defendants' motion to dismiss is GRANTED.

## BACKGROUND

I.   Parole Proceedings and Challenge to Plaintiff's Sex Offender Status Designation

In 1984, following a jury trial, Plaintiff was convicted of raping and robbing a twenty-two-year-old woman. (Am. Compl. at 5). Plaintiff was sentenced to a term of imprisonment of "9 to 18 years, which was to run consecutive[ly] to a term of 25 years that he received on an unrelated robbery conviction." (*Id.*).[4] Plaintiff's maximum release date was November 26, 2035. *See* N.Y.

---

[2] The Court directed the Clerk of the Court to prepare the paperwork necessary to effect service on Foster, Whitbeck, Amsler, Elffied, Osborne, and Webster. (*See* Ord. of Serv.).Upon review of the docket, it does not appear that the forms were prepared or service attempted. As such, the Court shall issue an additional Order directing service of the Amended Complaint after this Memorandum Opinion and Order is docketed. The Board was dismissed from this action by operation of the Eleventh Amendment. (*Id.* at 2-3).

[3] Citations to Plaintiff's opposition brief correspond to the pagination generated by ECF.

[4] The Court notes that this information conflicts with the recitation of facts in the related decision issued by the New York State Appellate Division, First Department. *See People v. Williams*, 49 N.Y.S.3d 671, 672 (App. Div. 2017) (noting that Plaintiff "was sentenced to a term of imprisonment of 15 to 30 years, which was run consecutively to a term of 12 ½ to 25 years that he received on an unrelated robbery conviction"). While the Court is entitled to take judicial notice of opinions issued by other courts, it may do so "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Tirse v. Gilbo*, No. 15-CV-987, 2016 WL 4046780, at *14 (N.D.N.Y. July 27, 2016) (internal quotation marks omitted).

Dep't of Corrs. & Cmty. Supervision, Inmate Population Information Search ("Inmate Lookup"),

http://nysdoccslookup.doccs.ny.gov (last visited Feb. 4, 2021).[5]

Plaintiff was granted parole in June 2015 and, in July 2015, the Board concluded that he "should be designed [sic] a level [three] sex offender." (Am. Compl. at 6). Plaintiff appeared thereafter before the Supreme Court of the State of New York for a hearing under the Sex Offender Registration Act ("SORA") on September 10, 2015. (*Id.*). While the Supreme Court adopted the Board's recommendation and designated Plaintiff a level three sex offender, by an Opinion dated March 21, 2017, the New York State Appellate Division, First Department, "exercise[d] [its] discretion to modify [Plaintiff's] sex offender adjudication from level three to level two." *Williams*, 49 N.Y.S.3d at 673; (Am. Compl. at 6).

II.   <u>Plaintiff's Release from Woodbourne Correctional Facility</u>

As Plaintiff's sex offender designation was being adjudicated in the manner outlined above, following the June 2015 decision to grant Plaintiff parole, DOCCS employees at Woodbourne worked to prepare him for release.

On August 15, 2015, Novoa gave Plaintiff a letter which advised that, upon his release, Watkins would be Plaintiff's Parole Officer. (Am. Compl. at 9). Sometime in September 2015— after the Supreme Court adopted the Board's recommendation classifying Plaintiff as a level three

---

[5] "The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information." *Simmonds v. Family Dollar Store*, No. 18-CV-1241, 2018 WL 5447046, at *1 n.1 (E.D.N.Y. Oct. 25, 2018); *see also Jackson v. Sullivan Cty.*, No. 16-CV-3673, 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018) ("Courts in this district have taken judicial notice of information obtained from online inmate tracking services." (internal quotation marks omitted)); *Rosario v. New York City*, No. 12-CV-4795, 2013 WL 2099254, at *1 n.1 (S.D.N.Y. May 15, 2013). Plaintiff's information is available by searching the "Department Identification Number" or "DIN" 85-B-0689. The resulting information shows that Plaintiff was released from Woodbourne Correctional Facility ("Woodbourne") on December 13, 2016. (*See* Def. Br. at 7 (citing Inmate Lookup); Opp. Br. at 3 (advising that "Plaintiff was released from Woodbourne Correctional Facility on December 13, 2016")).

sex offender, but more than a year before the Appellate Division rendered its decision—Darlene McPherson ("McPherson"), Plaintiff's stepsister, contacted Novoa to "express[] that plaintiff could move in with her . . . ." (*Id*. at 6-7). Upon learning that McPherson had a minor child in the home, "Novoa told her that plaintiff could not move in with [McPherson] because her son was under eighteen years old." (*Id*. at 7). Plaintiff maintains that neither "the Parole Board Commissioner" nor his Parole Officer ever restricted him from living with a minor. (*Id*.). Throughout October, November, and December 2015, Plaintiff spoke regularly with Watkins who reported "that he was in the process of finding suitable housing for plaintiff." (*Id*. at 9).

In February 2016, Watkins notified Plaintiff "that he had found an approved address and that plaintiff should be released shortly." (*Id*. at 9-10). That same month, however, a "neurosurgeon at Albany Medical Center" recommended that Plaintiff have an unspecified surgery; that recommendation was approved by DOCCS and the surgery was scheduled for March 2016. (*Id*. at 7). On March 11, 2016, Novoa advised Plaintiff "that an address ha[d] been approved and that plaintiff would be released shortly." (*Id*.). The release was scheduled for just three days later, March 14, 2016. (*Id*. at 8). Instead of pursuing his release, Plaintiff told Novoa that he "would like to have the medical procedure done before his release." (*Id*. at 7). Plaintiff claims Novoa cautioned, "[T]hey don't want you to get the surgery because it's too costly. You can go home now or get the surgery and jeopardize your freedom." (*Id*.). Plaintiff confirmed that he "wanted the surgery first," and Novoa "said she would inform her supervisor." (*Id*.). Plaintiff alleges that he had a similar conversation with Lyn Lilley ("Lilley"), Woodbourne's Superintendent, the week before the surgery. (*Id*. at 8). Lilley told Plaintiff "that he could get the surgery and then be released." (*Id*.). Plaintiff presumably had the surgery. (*See* Opp. Br. at 8 (arguing that Plaintiff "spen[t] an additional eight months in prison after his surgery").

4

Plaintiff contacted Watkins sometime in May 2016 and the latter observed, "You should have been released. I called the facility and informed the SORC (Mr. Essex) of the approved address. I will make another call and inform him again." (*Id*. at 10). Plaintiff and Watkins spoke again in June and July 2016, and while Watkins "did not know what was going on," he indicated that "he would call the facility again." (*Id*.). Plaintiff alleges no further contact between himself and Mr. Watkins. (*Id*.).

At some point in May 2016, Plaintiff saw Essex "and inquired about his release." (*Id*. at 8). In turn, "Essex said he would look in to [sic] the situation and get back to plaintiff." (*Id*.). Although Plaintiff saw "Essex on several occasions" thereafter, Essex refused to engage him. (*Id*.). Plaintiff maintains that Essex evaded him despite "receiving several phone calls" from Watkins and Lilley's June 2016 representation that "he would speak with" Essex. (*Id*. at 8-9). The matter was eventually resolved after Plaintiff's December 9, 2016 meeting with Foster. (*Id*. at 9; Opp. Br. at 3). At that meeting, Foster "checked the computer," asked Plaintiff why he was still at Woodbourne, noted that Plaintiff's "address was approved several times," and commented, "[T]his can't continue." (Am. Compl. at 9). Plaintiff was released shortly thereafter, on December 13, 2016. (Opp. Br. at 3). His sex offender designation was altered from a level three status to a level two status by operation of the appellate court's decision months later. (Am. Compl. at 6).

## STANDARD OF REVIEW

I.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory of constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction

bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.   <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (alteration in original)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I.   Lack of Subject-Matter Jurisdiction

The Court, as guided by precedent, turns first to the Served Defendants' two arguments regarding the lack of subject-matter jurisdiction and dismissal required under Rule 12(b)(1).

A.   New York Correction Law § 24

The Served Defendants argue first that, although Plaintiff does not allege specifically any tort claims under New York State law, to the extent Plaintiff may be construed to do so, this Court must dismiss those claims for want of subject-matter jurisdiction. (Def. Br. at 16).

New York Correction Law § 24 provides, in pertinent part:

1.   No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2.   Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the

>department shall be brought and maintained in the court of
>claims as a claim against the state.

N.Y. Corr. Law §§ 24(1)-(2). "The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." *Sughrim v. New York*, No. 19-CV-7977, 2020 WL 7047697, at *21 (S.D.N.Y. Nov. 30, 2020) (quoting *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015)); *see also Davis v. McCready*, 283 F. Supp. 3d 108, 124 (S.D.N.Y. 2017) (concluding that "under Section 24, any tort claim arising under New York law against Defendant must be dismissed for lack of subject matter jurisdiction"); *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (S.D.N.Y. 2014) ("Plaintiff's state law claims against Defendants Waters and Clark are barred because New York Correction Law § 24 shields them from liability for state law claims in both state and federal court.").

Upon review of the Amended Complaint, Plaintiff does not suggest that the Served Defendants acted outside the scope of their employment. (*See generally*, Am. Compl.); *see also Cruz*, 24 F. Supp. 3d at 310 (explaining that "[t]he test to determine whether the defendants' actions fall within the scope of their employment is whether the act was done while the servant was doing the master's work no matter how irregularly, or with what disregard of instructions" (internal quotation marks omitted)). As such, because any state law claims stated or inferred against the Served Defendants "would be barred in New York state courts, this Court equally lacks jurisdiction over the claims." *Hassell*, 96 F. Supp. 3d at 385. While this conclusion mandates the dismissal of any claims under New York State law for lack of subject-matter jurisdiction under Rule 12(b)(1), it does not impact the viability of Plaintiff's claims for relief under federal law.

B.  Eleventh Amendment

The Served Defendants' second argument is that Plaintiff's federal claims for relief under 42 U.S.C. § 1983 must be dismissed for want of subject-matter jurisdiction insofar as they seek compensatory damages against the Served Defendants in their official capacities. (Def. Br. at 16-17). This argument is based on the immunity provided by the Eleventh Amendment. (*Id.*).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This has been interpreted to bar suits, even those arising under federal law, against a state by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-7953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Consequently, because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, the claims for relief under 42 U.S.C. § 1983 are dismissed under Rule 12(b)(1) to the extent they seek relief against the Served Defendants in their official capacities. This result, however, does not affect the federal claims against the Served Defendants in their individual capacities.

II.  Failure to State a Claim Under 42 U.S.C. § 1983

Turning to the substantive arguments made under Rule 12(b)(6), reading the Amended Complaint liberally, Plaintiff asserts four separate claims for relief under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). As such, in each permutation of a claim under that law, "a plaintiff must demonstrate: '(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor.'" *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019) (quoting *Walker v. Clemson*, No. 11-CV-9623, 2012 WL 2335865, at *3 (S.D.N.Y. June 20, 2012)).

The Served Defendants advance a variety of arguments as to why Plaintiff's four federal claims for relief should be dismissed. The Court addresses these arguments *seriatim*.

A.  All Claims for Relief: Personal Involvement

As a fundamental prerequisite, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (noting that supervisory liability requires that the "defendant, through the official's own individual actions, has violated the Constitution" (quoting *Iqbal*, 556 U.S. at 676)); *Greene v. Sampson*, No. 18-CV-6103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint fatally defective on its face. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Plaintiff fails to plead the Served Defendants' personal involvement in any constitutional violation.

With respect to Novoa, her role is limited to: (1) advising Plaintiff in August 2015 that Watkins would be his Parole Officer; (2) informing McPherson that Plaintiff could not reside with a minor; (3) cautioning Plaintiff that deciding to remain incarcerated in order to have the unspecified surgery "could jeopardize [his] freedom;" and (4) informing Plaintiff that "they" did not want Plaintiff to have the surgery. (Am. Compl. at 6-7, 9, 16). None of these allegations suggest plausibly that Novoa took any action preventing Plaintiff's release. *See generally Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 163 (S.D.N.Y. 2007) (dismissing Eighth Amendment claim on summary judgment and finding, *inter alia*, that the plaintiff has "not established a causal connection between any of [the defendant's] actions and plaintiff's extended incarceration"). Even the alleged interaction between Novoa and McPherson is insufficient; indeed, Plaintiff does not explain Novoa's role or her authority, and he pled that he was in regular communication with Watkins, who, in turn, was focused on "finding [him] suitable housing." (Am. Compl. at 9).

12

As for Essex, his role is limited to being an ORC Supervisor. Reading the Amended Complaint broadly, Plaintiff alleged that: (1) he complained to Essex in May 2016 about the delay in being released; (2) Essex said he would "look in to [sic]" Plaintiff's complaint, but never followed up; (3) Watkins called Essex about Plaintiff's delay in release; and (4) Lilley said he would call Essex. (Am. Compl. at 8-10). Such allegations, without more, do not plead Essex's personal involvement in any constitutional violation. *See, e.g.*, *Oh v. Saprano*, No. 20-CV-237, 2020 WL 4339476, at *7 (D. Conn. July 27, 2020) (alleging that five defendants "said they would look into it, but nothing happened" was insufficient for inmate to allege defendants' personal involvement in a constitutional deprivation); *Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at *15 (S.D.N.Y. Aug. 15, 2012) (complaint to jail superintendent was "insufficient to make out a *prima facie* claim of personal involvement against supervisors"), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012).

Accordingly, as Plaintiff failed to plead facts suggesting that the Served Defendants were personally involved in any constitutional violation, none of his federal claims can survive. Nevertheless, even if the Court assumed that Plaintiff pled the Served Defendants' personal involvement, each claim for relief suffers from its own independent shortcomings that provide a separate basis for dismissal under Rule 12(b)(6).

B.  Cruel and Unusual Punishment Claim for Relief (Eighth Amendment)

The Eighth Amendment instructs: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII. "To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. Second, he must allege that the conduct was objectively harmful enough or

13

sufficiently serious to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (internal citations and quotation marks omitted); *see also Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). "For extended incarceration to rise to the level of an Eighth Amendment violation, it must . . . be the product of deliberate indifference." *D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *10 (S.D.N.Y. Dec. 19, 2017) (alteration in original, internal quotation marks omitted). However, "to prevail on such claims, plaintiffs must normally allege that they were held beyond their maximum sentence." *Joseph v. Cuomo*, No. 20-CV-3957, 2021 WL 200984, at *9 (E.D.N.Y. Jan. 20, 2021); *see also Flowers v. Annucci*, No. 19-CV-0925, 2019 WL 5596361, at *2 (N.D.N.Y. Oct. 30, 2019) (dismissing the plaintiff's Eighth Amendment claim because the complaint "lack[ed] any allegations which plausibly suggest that plaintiff remained in DOCCS' custody beyond his maximum state court sentence"); *D'Angelo*, 2017 WL 6514692, at *10 ("Even if the Court were to find that Plaintiff had met the deliberate indifference requirement, the Complaint would still fail to plausibly state an Eighth Amendment claim given that Plaintiff was not held beyond his *maximum* sentence" (emphasis in original)).

The maximum expiration date of Plaintiff's sentence was November 26, 2035, some fifteen years hence. (*See* Inmate Lookup.)[6] As such, even if the Court were to assume that Plaintiff pled facts necessary to establish the Served Defendants acted with deliberate indifference to keep him in custody—which he has not done—the claim would still have to be dismissed because it is

---

[6] This conclusion would be the same if the Court considered only Plaintiff's allegations as to his sentences. Plaintiff pled that he was convicted in 1984 and sentenced to a term of imprisonment of "9 to 18 years, which was to run consecutive[ly] to a term of 25 years he received on an unrelated robbery conviction." (Am. Compl. at 5). Using these numbers (a sentence with a maximum term of eighteen years to be followed consecutively by a sentence with a maximum term of twenty-five years), Plaintiff's earliest maximum release date would be in 2027.

impossible for Plaintiff to claim that he was incarcerated beyond his maximum sentence. As such, Plaintiff's Eighth Amendment claim for relief is dismissed for failure to state a claim.[7]

      C.  <u>Denial of Procedural Due Process Claim for Relief (Fourteenth Amendment)</u>

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Joseph*, 2021 WL 200984, at *6 (quoting *Adams v. Annucci*, No. 17-CV-3794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-8800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). For this claim, while the Court may infer facts establishing the first element, Plaintiff offers no information as to the second.

"[W]hile there is no inherent federal right to parole, states are able to create a liberty interest that is protected by the Due Process Clause of the Fourteenth Amendment for inmates." *Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *2 (S.D.N.Y. Apr. 29, 2016). "[I]n order to have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release. He must, instead, have a legitimate claim of entitlement to it." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Green v. McCall*, 822 F.2d 284, 288 (2d Cir. 1987)). Here, Plaintiff says he was granted parole in June 2015, but does not provide a date on which he would have been released. (Am. Compl. at 6). Presumably, given Plaintiff's status as a sex offender and the

---

[7] The Court notes that the Second Circuit's recent holding in *Hurd v. Fredenburgh*, 984. F.3d 1075 (2d Cir. 2021) does not alter this determination. There, the Circuit concluded that the District Court erred in finding that the plaintiff "failed to allege a harm of constitutional magnitude because he was released before his maximum sentence expired." *Id*. That case concerned the application N.Y. Penal Law § 70.40(1)(b) and incarceration beyond the plaintiff's "conditional release date," a date calculated based on time served and time credited for good behavior. *Id*. As observed by the Circuit, "conditional release under New York law is unlike parole, which is a discretionary decision reserved to the judgment of the parole board." *Id*.

requirement to find proper housing for him prior to being released, that date would qualify as an "open release date." *See People ex rel. Johnson v. Superintendent, Adirondack Corr. Facility*, --- N.E.3d ---, 2020 WL 6828834, at *1 n.1 (N.Y. Nov. 23, 2020) (explaining that "[a]n open parole date or open date is the earliest possible release date," and that "[t]his date is contingent upon the inmate receiving an approved residence in accordance with established residency restrictions and local laws" (internal quotation marks omitted)); *De Zimm v. New York State Bd. of Parole*, 524 N.Y.S.2d 851, 851 n.1 (App. Div. 1988) ("An open parole release date means an inmate may be released as soon after that date as a satisfactory parole program becomes available."). In short, "a New York inmate who has been granted an open parole release date has a legitimate expectancy of release that is grounded in New York's regulatory scheme." *Victory*, 814 F.3d at 60.

However, even if the Court assumes correctly that Plaintiff was given an open release date and therefore had a protected liberty interest in his release, *see Williams*, 49 N.Y.S.3d at 673 (noting "an open release date of July 21, 2015"), Plaintiff offers no account of how any procedures were constitutionally insufficient (*see generally* Am. Compl.). Rather, Plaintiff cites to segments of the New York Administrative Code and argues that Novoa's interaction with McPherson constituted a "special condition" that could be imposed only by the Parole Board.[8] (Opp. Br. at 3, 6). Even if the Court assumes *arguendo* that Plaintiff pled facts establishing that Novoa imposed a special condition on Plaintiff's release—something he has not done—Plaintiff offers no basis to conclude that the condition violated the Constitution, only that its imposition allegedly violated New York laws or regulations. It is well-established that a violation of state law, without more, does not plead constitutionally insufficient procedures. *See, e.g.*, *Russell v. Coughlin*, 910 F.2d 75,

---

[8] The fact that Plaintiff refers only to those regulations that could be associated with Novoa's conduct underscores Essex's lack of personal involvement with respect to this claim.

78 n.1 (2d Cir. 1990) ("Federal constitutional standards rather than state law define the requirements of procedural due process."); *Furman v. Rich*, No. 19-CV-2748, 2020 WL 3975469, at *3 (E.D.N.Y. July 14, 2020) (noting that a process' sufficiency is "measured, for purposes of [a] due-process claim, against the U.S. Constitution—not state law, the Stipulation between the parties, or another standard"); *Holland v. City of New York*, 197 F. Supp. 3d 529, 548-49 (S.D.N.Y. 2016) ("It is well settled that a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law." (internal quotation marks omitted)).

Consequently, even if the Court infers that Plaintiff stated a protected liberty interest in an open release date in July 2015, he has not provided any facts specifying how any procedure preventing him from being released was constitutionally insufficient (or how the Served Defendants were personally involved in that deprivation). This claim is dismissed.

### D.   Denial of Equal Protection Claim for Relief (Fourteenth Amendment)

The Fourteenth Amendment provides also that "[n]o State shall . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "This provision is essentially a direction that all persons similarly situated should be treated alike." *Santucci*, 2021 WL 76337, at *4 (internal quotation marks omitted). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [the Second Circuit] ha[s] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Lopes v. Westchester Cty.*, No. 18-CV-8205, 2020 WL 7029002, at *7 (S.D.N.Y. Nov. 30, 2020) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (alterations in original)). A claim for the violation of Plaintiff's right to equal protection may proceed in two scenarios: (1) selective

enforcement; or (2) class of one. *Id*. at *7 (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013)); *see also Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 4891339, at *4 (S.D.N.Y. Aug. 19, 2020)).

To proceed on a selective enforcement theory, plaintiffs "must plausibly allege that any selective treatment they experienced 'was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [them].'" *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (alteration in original)). As for a class of one theory, "the plaintiff must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and different in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Lopes*, 2020 WL 7029002, at *8 (quoting *Fahs Constr. Grp., Inv. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013)). Although both theories require a different level of specificity as to comparators against whom Plaintiff's treatment may be contrasted, under either theory Plaintiff must plead facts pertaining to comparable individuals. *See Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019) (explaining that a selective enforcement theory requires comparators with a "reasonably close resemblance" and that a class of one theory necessitates comparators with an "extremely high" level of similarity (internal quotation marks omitted)).

Although the question of "whether two comparators are similarly situated is [generally] a factual issue that should be submitted to the jury," *Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 978514, at *6 (S.D.N.Y. Feb. 28, 2020) (quoting *LTTR Home Care, LLC v. City*

18

*of Mount Vernon Indus. Dev. Agency*, No. 17-CV-9885, 2019 WL 4274375, at *12 (S.D.N.Y. Sept. 10, 2019) (alteration in original)), on a Rule 12(b)(6) motion the Court "must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Vaher*, 916 F. Supp. 2d at, 434 (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 697-98 (S.D.N.Y. 2011)).

This claim must be dismissed because Plaintiff fails to plead the existence of any comparators with any specificity. Rather, Plaintiff pled that he was "denied his liberty and equal protected as similar [sic] situated prisoners. Once a prisoner is granted parole, and an address is approved, he or she should be released." (Am. Compl. at 16-17). These allegations are conclusory, complain about comparators in the abstract—individuals who, among other things, may or may not be sex offenders—and provide no basis to believe that a jury would conclude that Plaintiff bore a "reasonably close resemblance" to those individuals, much less an "extremely high" level of similarity. As Plaintiff failed to plead with specificity the existence of any comparator, a component required under either equal protection theory, the claim must be dismissed.

### E.  Retaliation (First Amendment)

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-9235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An action is "adverse" when  it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-3632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.

2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted)

Plaintiff alleged that he "was retaliated against for having the surgery done prior to his release (and complaints)." (Am. Compl. at 16). Specifically, he insists that "defendants took adverse action against him by not process [sic] his paper work [sic] causing [him] to spend an additional eight months in prison after his surgery." (Opp. Br. at 8; *see also* Am. Compl. at 16 ("Essex, Novoa, and Foster did not process . . . release papers[] in a timely manner")). Even if the Court assumes that Plaintiff's request to remain incarcerated in order to have DOCCS pay for his surgery qualified as a protected activity, he offers no specificity as to: how extended incarceration "would deter a similarly situated individual" from making the same request he made (aware that his time in prison could be extended); when the adverse action occurred; what roles the Served Defendants played in the adverse action; a causal connection between the request and adverse action; the earliest he could have been released after surgery; whether the Served Defendants had authority to keep or release him; or when Essex knew Plaintiff chose to prolong his incarceration.

20

"Where, as here, the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation." *Dorsey*, 468 F. App'x at 27.

As Plaintiff offers nothing but conclusory allegations suggesting only the theoretical possibility that the Served Defendants retaliated against him, the claim is dismissed.[9]

## CONCLUSION

Based upon the foregoing, the Served Defendants' motion to dismiss is GRANTED without prejudice. Should he be so advised, Plaintiff may file a Second Amended Complaint within thirty days from the date of this Order to address the pleading deficiencies identified herein. Failure to file a Second Amended Complaint within thirty days will result in dismissal of the claims for relief against the Served Defendants with prejudice. Plaintiff is reminded that if he chooses to file a Second Amended Complaint, the Second Amended Complaint will completely replace, not supplement, the Complaint and Amended Complaint. Therefore, any facts or claims that Plaintiff wishes to maintain must be included in the Second Amended Complaint.

The Clerk of the Court is respectfully directed to mail a copy of this Memorandum Opinion and Order to Plaintiff and terminate the motion sequence pending at Doc. 20.

**SO ORDERED:**

Dated:   New York, New York
         February 5, 2021

_____
PHILIP M. HALPERN
United States District Judge

---

[9] The Served Defendants make two additional arguments. First, they argue for dismissal of any "declaratory relief claims . . . ." (Def. Br. at 19). While the Court does not construe the Amended Complaint to seek such relief, because the federal claims against the Served Defendants have been dismissed, any attendant declaratory judgment claim is also dismissed. *See Porat v. Lincoln Towers Cmty. Ass'n*, No. 04-CV-3199, 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005), *aff'd*, 464 F.3d 274 (2d Cir. 2006). Second, they argue that they are shielded by qualified immunity. (Def. Br. at 17-18). Given the conclusions reached herein, the Court need not and does not reach that issue.