UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW WILLIAMS,

                    Plaintiff,

          -against-

E. NOVOA, ORC, et al.,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-11545 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Andrew Williams ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed his Second Amended Complaint ("SAC") on March 9, 2021. (Doc. 39, "SAC").[1] This pleading, like its predecessor, proceeds under the First, Eighth, and Fourteenth Amendments against: (1) Novoa; (2) Foster; (3) Essex; (4) Watkins; (5) the New York State Board of Examiners of Sex Offenders ("Board"); (6) Whitbeck; (7) Amsler; (8) Elffied; (9) Osborne; and (10) Webster (collectively, "Defendants"). (*Compare* SAC, *with* Doc. 14 "AC").[2]

Novoa, Foster, and Essex ("Served Defendants") filed a motion to dismiss the SAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on May 28, 2021. (Doc. 44; Doc. 45, "Def. Br."). Plaintiff opposed the motion by a memorandum of law filed on August 6, 2021 (Doc. 51, "Opp."), and the motion was briefed fully with the filing of the Served Defendants' reply memorandum of law in further support of their motion on August 13, 2021 (Doc. 52).

For the reasons set forth below, the Served Defendants' motion is GRANTED.

---

[1] The Court dismissed the Amended Complaint without prejudice to refiling a Second Amended Complaint in a February 5, 2021 Memorandum Opinion and Order. (Doc. 30, "Prior Ord."). Notwithstanding the fact that this prior decision is available on commercial databases, *see Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445 (S.D.N.Y. Feb. 5, 2021), any citations to it correspond to the copy filed on the docket.

[2] Capitalized terms not otherwise defined herein retain the meanings ascribed to them in the Court's February 5, 2021 Memorandum Opinion and Order. (*See* Prior Ord.).

**BACKGROUND**

I.   Plaintiff's Convictions, Parole, and Sex Offender Registration Designation

Plaintiff was convicted of raping and robbing a twenty-two-year-old woman following a jury trial in 1984. (SAC at 5).[3] Plaintiff maintains that he was thereafter sentenced to a term of imprisonment of "9 to 18 years, which was to run consecutive[ly] to a term of 25 years that he received on an unrelated robbery conviction." (*Id*.).[4] According to the DOCCS inmate lookup website, Plaintiff's maximum release date was November 26, 2035.[5]

More than thirty years after the 1984 conviction, in June 2015, the New York State Board of Parole ("Parole Board") granted Plaintiff parole. (*Id*. at 6). The following month, July 2015, the Board recommended that Plaintiff be classified as a level three sex offender. (*Id*.).[6] Thereafter, in September 2015, Plaintiff appeared in the New York State Supreme Court, New York County, for a hearing to determine his risk level in accordance with the Sex Offender Registration Act ("SORA"), N.Y. Corr. Law § 168 *et seq*. (*Id*.). The Supreme Court agreed with the Board's recommendation. (*Id*.). In an Opinion dated March 21, 2017, however, the New York State

---

[3] Citations to the SAC and Plaintiff's opposition brief correspond to the pagination generated by ECF.

[4] The Court noted previously that what Plaintiff claims his sentences were contradicts an integral decision rendered by the New York State Appellate Division, First Department. (Prior Ord. at 2 n.4 (citing *People v. Williams*, 49 N.Y.S.3d 671, 672 (App. Div. 2017)). However, while the Court is entitled to take judicial notice of opinions issued by other courts, it may do so "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Tirse v. Gilbo*, No. 15-CV-00987, 2016 WL 4046780, at *14 (N.D.N.Y. July 27, 2016) (internal quotation marks omitted).

[5] "The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information." *Simmonds v. Family Dollar Store*, No. 18-CV-01241, 2018 WL 5447046, at *1 n.1 (E.D.N.Y. Oct. 25, 2018); *see also Siler v. Munroe*, No. 20-CV-05794, 2021 WL 6064701, at *6 n.6 (S.D.N.Y. Dec. 22, 2021); *Phillips v. DOCCS*, No. 21-CV-00970, 2021 WL 5822539, at *2 n.6 (N.D.N.Y. Dec. 8, 2021) (taking judicial notice of the plaintiff's maximum expiration date on the DOCCS inmate lookup website); *Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *8 n.4 (S.D.N.Y. Apr. 29, 2021).

[6] The Board, under N.Y. Corr. Law § 168-l(6), "make[s] a recommendation to the sentencing court which shall be confidential and shall not be available for public inspection, providing for one of the following three levels of notification depending upon the degree or the risk of re-offense by the sex offender."

Appellate Division, First Department, modified Plaintiff's designation and departed downward from a level three to a level two sex offender classification. (*Id.*).[7]

II.   Plaintiff's Incarceration at Woodbourne Correctional Facility

Plaintiff was housed at Woodbourne from the time he was granted parole in June 2015 until his ultimate release in December 2016. (*Id.* at 2; *see also generally id.* at 6-11).

A.   2015 Events

On August 15, 2015, Novoa—with whom Plaintiff met every three months—gave Plaintiff a letter advising that Watkins would "be his parole officer upon release." (*Id.* at 8, 10). Sometime in September 2015 (i.e., while the Supreme Court's decision regarding Plaintiff's sex offender designation was on appeal) Novoa spoke with McPherson, Plaintiff's stepsister, about Plaintiff's release. (*Id.* at 6-7). McPherson explained that Plaintiff "could move in with her because there were no schools within a thousand feet from her residence." (*Id.*).[8] Upon learning, however, that a minor lived with McPherson, Novoa concluded that Plaintiff could not reside in that home. (*Id.* at 7). Throughout October, November, and December 2015, Watkins engaged "in the process of finding suitable housing" for Plaintiff's release. (*Id.* at 10).

B.   2016 Events

Watkins informed Plaintiff, sometime in February 2016, that "an approved address" was located and that Plaintiff would "be released shortly." (*Id.* at 10-11). Likewise, at some point that

---

[7] *See also Williams*, 49 N.Y.S.3d at 540.

[8] When a level three sex offender is released on parole, the Parole Board, by law, "shall require, as a mandatory condition of such release, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in subdivision fourteen of section 220.00 of the penal law, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen . . . ." N.Y. Exec. Law § 259-c(14). "School grounds," as defined by N.Y. Penal Law § 220.00(14)(b), includes, in pertinent part, "any area accessible to the public located within one thousand feet of the real property boundary line . . . ."

same month, a "neurosurgeon at Albany Medical Center" recommended that Plaintiff have an unidentified surgery. (*Id*. at 7). The surgery was approved by DOCCS and scheduled for an unspecified date in March 2016. (*Id*.).

On March 11, 2016—before Plaintiff's surgery—Novoa notified Plaintiff that he "would be released shortly." (*Id*.). Plaintiff was scheduled to be released from custody days later, on March 14, 2016. (*Id*. at 8). Novoa had Plaintiff sign documents required for his release, but Plaintiff objected, and demanded that "the medical procedure" be performed first. (*Id*. at 7). Novoa warned Plaintiff, "[T]hey don't want you to get the surgery because it's too costly. You can go home now or get the surgery and jeopardize your freedom." (*Id*.). Plaintiff nevertheless insisted that he "wanted the surgery first." (*Id*.). Novoa "said she would inform her supervisor," Essex. (*Id*.). Sometime following this interaction, in March 2016 and before the surgery, Plaintiff spoke with Woodbourne's Superintendent, Lilley. (*Id*. at 8). Lilley agreed that Plaintiff could have the surgery before being released and that Plaintiff had made "a wise decision to do it that way." (*Id*.). The surgery was performed on March 25, 2016. (Opp. at 8).[9]

Approximately two months after the surgery, at some point in May 2016, Plaintiff spoke with Watkins about being released. (SAC at 11). During that conversation, Watkins stated, "[Y]ou are still at Woodbourne. You should have been released. I called the facility and informed . . . Essex and . . . Novoa . . . of the approved address. I also emailed [t]he facility and entered the information in the computer. I will make another call and inform him again." (*Id*.). Plaintiff also at some point in May 2016 spoke directly with Essex about being released. (*Id*. at 8). Essex was aware that Plaintiff had been granted parole because "counselors" like Essex, Foster, and Novoa

---

[9] The Court may consider factual allegations raised for the first time in a *pro se* party's opposition brief when the allegations are consistent with the facts presented in the pleading. *Jackson v. Polizzi*, No. 20-CV-03105, 2021 WL 5909979, at *4 n.3 (S.D.N.Y. Dec. 13, 2021).

"process[ed] all of the parolees' paperwork." (*Id*.). Essex said that he would "look into" the issue and "get back to" Plaintiff. (*Id*. at 9). Essex did not, however, provide Plaintiff with any update; indeed, Essex ignored Plaintiff and Watkins thereafter. (*Id*.). Plaintiff reports that, at some point in June 2016, Lilley said he would also speak to Essex on Plaintiff's behalf. (*Id*. at 8).

Roughly seven months later, on December 9, 2016—months before the Appellate Division rendered its decision modifying Plaintiff's sex offender level—Plaintiff met with Foster. (*Id*. at 9). Foster, during this meeting, "checked the computer," asked Plaintiff why he was still at Woodbourne, noted that a release address was approved "several times," and declared, "[T]his can't continue." (*Id*.). Foster said that Novoa "never processed [the] release papers" and asked Plaintiff whether he had "a problem with . . . Novoa or . . . Essex." (*Id*.). Plaintiff denied having negative relationships with either person. (*Id*.). He was released "three business days" later. (*Id*.).

This litigation followed.

## STANDARD OF REVIEW

I.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a Rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id*. (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.  Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

6

statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I.   Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

The Court, as guided by precedent, turns first to the Served Defendants' arguments regarding the lack of subject-matter jurisdiction and dismissal mandated under Rule 12(b)(1).

A.   New York Correction Law § 24

The Served Defendants, in reading the SAC broadly, argue that "[t]o the extent that Plaintiff is . . . attempting to assert any State Law claims, such as negligence, recklessness, or violation of any New York State Correction Law provision, such claims must be dismissed as a matter of law . . . ." (Def. Br. at 27). The Court, as it did in its previous decision, agrees with the Served Defendants on this point. (*See* Prior Ord. at 8-9).

New York Correction Law § 24 provides, in pertinent part, as follows:

1.  No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2.  Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Corr. Law §§ 24(1)-(2).

"The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." *Sughrim v. New York*, No. 19-CV-07977, 2020 WL 7047697, at *21 (S.D.N.Y. Nov. 30, 2020) (quoting *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015)); *see*

*also Brown v. Griffin*, No. 18-CV-05439, 2019 WL 4688641, at *8 (S.D.N.Y. Sept. 25, 2019) (dismissing claims for alleged violations of the New York State Constitution); *Davis v. McCready*, 283 F. Supp. 3d 108, 124 (S.D.N.Y. 2017) ("[U]nder Section 24, any tort claim arising under New York law . . . must be dismissed for lack of subject matter jurisdiction."); *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) ("Plaintiff's state law claims against Defendants . . . are barred because New York Correction Law § 24 shields them from liability for state law claims in both state and federal court.").

As with the pleading's prior rendition, Plaintiff never suggests that the Served Defendants acted outside the scope of their employment. (*See generally* SAC; Prior Ord. at 9); *see also Cruz*, 24 F. Supp. 3d at 310 (explaining that "[t]he test to determine whether the defendants' actions fall within the scope of their employment is whether the act was done while the servant was doing the master's work no matter how irregularly, or with what disregard of instructions" (internal quotation marks omitted)). As such, because any state law claims against the Served Defendants "would be barred in New York state courts, this Court equally lacks jurisdiction over the claims." *Hassell*, 96 F. Supp. 3d at 385.

Any claims pressed under New York State law against the Served Defendants are, therefore, dismissed.

II.   <u>Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted</u>

The federal claims for relief proceed under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the

violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). The alleged violations here stem from the First, Eighth, and Fourteenth Amendments. (*See generally* SAC).

### A.   First Amendment Retaliation Claim[10]

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (alteration in original)). An action is "adverse" in the prison context when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-03632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). As to causation, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320

---

[10] The Served Defendants argued also that the claims against them should be dismissed because Plaintiff failed to plead their personal involvement in any constitutional violation. (Def. Br. at 6-9). Given the conclusions reached herein on the claims' other substantive failings, the Court need not and does not address whether Plaintiff adequately pled the Served Defendants' personal involvement.

F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff's theory on this claim for relief is that he was not released on parole as soon as possible in retaliation for opting to have the unexplained surgery before being discharged. (SAC at 18 ("Plaintiff was retaliated against for . . . having the surgery done prior to his release . . . .")).[11] This theory fails at the first step—protected activity—because "[c]ourts have not recognized a freestanding right to request medical attention as a protected activity sufficient to support a retaliation claim." *Gilmore v. Blair*, No. 18-CV-00463, 2020 WL 5792467, at *5 (N.D.N.Y. June 30, 2020), *adopted by* 2020 WL 5775203 (N.D.N.Y. Sept. 28, 2020); *see also James v. Gage*, No. 15-CV-00106, 2019 WL 6251364, at *6 (S.D.N.Y. Nov. 21, 2019) ("Defendants argue that a prisoner's right to seek or demand medical attention has not been clearly established by either the

---

[11] Among the additions Plaintiff made to the SAC was a paragraph asserting that the protected activity at issue here included complaints and litigation against Jean King ("King"), the Deputy Superintendent at Woodbourne—Essex and Novoa's direct supervisor. (SAC at 10; *see also id.* at 18; Opp. at 15-16). According to Plaintiff, this history "clearly illustrates that they had no intention of releasing him." (SAC at 10). This theory, however, cannot survive because it is offered only in conclusory terms; indeed, Plaintiff does not specify the dates of the allegations against King, what those allegations were, any proceeding's outcome, or whether the Served Defendants even knew about these interactions. (*See generally* SAC; Opp.). Rather, speculating about the connection, Plaintiff argues that "a fact finder could conclude that . . . [his] grievances and lawsuit against Ms. King motivated . . . Essex and Novoa not to process his release papers . . . ." (Opp. at 16). Such conjecture is insufficient to establish a causal connection and withstand a motion to dismiss. *See George v. Cty. of Westchester*, No. 20-CV-01723, 2021 WL 4392485, at *6 (S.D.N.Y. Sept. 24, 2021). It is certainly possible that Essex and/or Novoa had an ax to grind with Plaintiff because of his behavior *vis-à-vis* their supervisor, but Plaintiff does not provide a factual predicate to "nudge [his] claim across the line from conceivable to plausible" and "raise a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged . . . ." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (internal quotation marks omitted).

Supreme Court or the Second Circuit. The Court agrees." (internal citation omitted)).[12] However, even if the Court assumed that requesting surgery qualified as a protected activity, the claim for relief would still fail on the other two elements.

The second element asks simply whether the adverse action is of an ilk that would "chill a person of ordinary firmness from" exercising their constitutional rights. *Davis*, 320 F.3d at 353 (internal quotation marks omitted)); *see also Rodriguez v. City of New York*, No. 14-CV-08647, 2016 WL 5476003, at *7 (S.D.N.Y. Sept. 29, 2016). This test is objective and permits a claim even where a "plaintiff was not himself subjectively deterred" from engaging in a protected activity. *Gill*, 389 F.3d at 381. Notwithstanding the objective nature of this element, the reality of these facts is that Plaintiff affirmatively requested that the adverse action (i.e., prolonged incarceration) be imposed so that he could have his surgery at taxpayers' expense. (*See* SAC at 7-8). It can hardly be said that an inmate has a retaliation claim when the adverse action is precisely what he or she requested. *Cf. Booker v. City of New York*, No. 17-CV-07035, 2018 WL 4616048, at *6 (S.D.N.Y. Sept. 26, 2018) (dismissing retaliation claim where "the only direct result of the grievance seems to be that [the plaintiff] was directed to Edwards, who . . . approved, his . . . accommodation").

When it comes to the third element, "causation, a plaintiff must allege facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against him." *Cooper v. Annucci*, No. 18-CV-00762, 2020 WL 8474802, at *13 (N.D.N.Y. Nov. 9, 2020) (internal quotation marks omitted), *adopted sub nom. Cooper v. DeGraff*, 2021 WL

---

[12] Alternatively, if the Court did not dismiss this claim for relief on the merits, given the lack of clarity from the Second Circuit and Supreme Court as to whether an inmate's request for medical attention qualifies as a protected activity under the First Amendment, the Court would dismiss it on the basis of qualified immunity. *Gage*, 2019 WL 6251364, at *6 ("Given the absence of guidance from the Supreme Court and the Second Circuit, Defendants are entitled to qualified immunity because there is no clearly established right under the First Amendment for inmates to request medical attention." (internal quotation marks omitted)); (*see also* Def. Br. at 21-23 (arguing for dismissal based on qualified immunity)).

235946 (N.D.N.Y. Jan. 25, 2021). Plaintiff offers no factual predicate for concluding that the Served Defendants acted against him in any way because of a protected activity beyond simply insisting that a connection exists. (*See* SAC at 4, 18). Such an allegation, untethered to facts explaining plausibly how the Served Defendants' acts—whatever they were—were motivated by the protected activity, does not establish causation. *See Dorsey*, 468 F. App'x at 27 ("Without more, where, as here, the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation."); *Gunn v. Malani*, No. 20-CV-02681, 2021 WL 5507057, at *6 (S.D.N.Y. Nov. 23, 2021) ("[A] . . . retaliation claim must be supported by specific and detailed factual allegations and not stated in wholly conclusory terms." (internal quotation marks omitted)); *Vogelfang*, 889 F. Supp. 2d at 517; (*see also* Prior Ord. at 20-21).

The First Amendment claim against the Served Defendants is, therefore, dismissed.

B.  <u>Eighth Amendment Cruel and Unusual Punishment Claim</u>

"To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. Second, he must allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (internal citations and quotation marks omitted); *see also Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). "For extended incarceration to rise to the level of an Eighth Amendment violation, it must . . . be the product of deliberate indifference." *D'Angelo v. Annucci*, No. 16-CV-06459, 2017 WL 6514692, at *10 (S.D.N.Y. Dec. 19, 2017) (alteration in original, internal quotation marks omitted). However, "to prevail on such claims, plaintiffs must normally allege that they were held beyond their maximum sentence." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *9 (E.D.N.Y. Jan. 20, 2021); *see also Flowers v. Annucci*, No.

19-CV-00925, 2019 WL 5596361, at *2 (N.D.N.Y. Oct. 30, 2019) (dismissing the plaintiff's Eighth Amendment claim because the complaint "lack[ed] any allegations which plausibly suggest that plaintiff was incarcerated in DOCCS' custody beyond his maximum state court sentence"); *D'Angelo*, 2017 WL 6514692, at *10 ("Even if the Court were to find that Plaintiff had met the deliberate indifference requirement, the Complaint would still fail . . . [because] Plaintiff was not held beyond his *maximum* sentence." (emphasis in original)).

The analysis as to this claim for relief remains unchanged from the prior decision. According to the DOCCS inmate lookup website, Plaintiff's maximum release date following these convictions was November 26, 2035. This means that even if the Court assumes that Plaintiff pled all other necessary facts—which he still has not done—this claim for relief would have to be dismissed because it is impossible for Plaintiff to allege that he was in custody beyond his maximum sentence. (*See* Prior Ord. at 13-15).

Plaintiff's Eighth Amendment claim is dismissed as to the Served Defendants.

C.  Fourteenth Amendment Due Process Claim

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *6 (S.D.N.Y. Nov. 19, 2021) (quoting *Joseph*, 2021 WL 200984, at *6 (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020).

As it did in the prior decision, the Court infers that Plaintiff pled that he was granted an "open release date" and therefore assumes that Plaintiff had a protected liberty interest in being released. (*See* Prior Ord. at 15-16); *see also Victory v. Pataki*, 814 F.3d 47, 60 (2d Cir. 2016) ("[A] New York inmate who has been granted an open parole release date has a legitimate expectancy

of release that is grounded in New York's regulatory scheme."). Yet, even with the benefit of that assumption, Plaintiff cannot prevail because of his failings at the second element. With respect to that element, Plaintiff complains that he was deprived of his liberty interest because: (1) Novoa and Essex "rescinded" his parole and failed to process his "Certificate of Release papers;" (2) Novoa imposed a special condition on his release (i.e., not living in a household with minors); and (3) and nobody "referred him" to a rehabilitation program required under New York law for his release. (Opp. at 14). Assuming the truth of these allegations, they do not establish that the Served Defendants deprived Plaintiff of his protected liberty interest.

First, "[a]s a general matter, prisoners have no constitutional right to participate in drug treatment or other rehabilitative programs that might shorten their sentences or otherwise expedite their release." *Blount v. Badami*, No. 21-CV-02700, 2021 WL 2226631, at *3 (S.D.N.Y. June 1, 2021); *see also Mills v. Fischer*, No. 11-CV-00896, 2013 WL 550731, at *7 (N.D.N.Y. Jan. 2, 2013) (noting that there is "no constitutional right to . . . participation in prison programs which might expedite release" (internal quotation marks omitted), *adopted by* 2013 WL 551091 (N.D.N.Y. Feb. 12, 2013). Any failure to refer Plaintiff to a qualifying rehabilitation program is, therefore, not actionable under the Fourteenth Amendment.

Second, the authority to set the terms of parole rests with the Parole Board by statute, not officials at Woodbourne or the Board. *See* N.Y. Exec. Law § 259-c; *Thorn v. New York State Bd. of Parole*, 66 N.Y.S.3d 712, 714 (App. Div. 2017) (observing that the Parole Board "has broad discretion to rescind parole"); *see also Mabry v. Cuomo*, No. 11-CV-04456, 2012 WL 1711549, at *2 (S.D.N.Y. May 9, 2012) (explaining that if the Parole Board disregards New York State law, "that is not a review for the federal courts but is instead a determination left to the state courts").

Plaintiff offers no facts suggesting plausibly that the Served Defendants could (let alone did) usurp this role. (*See generally* SAC).

Third—and perhaps most fundamentally—all of these alleged procedural violations concern application of New York State law or regulations, and such violations are not a predicate for a constitutional claim. *See, e.g.*, *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("Federal constitutional standards rather than state law define the requirements of procedural due process."); *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("Clearly, a violation of state law is not cognizable under § 1983."); *Furman v. Rich*, No. 19-CV-02748, 2020 WL 3975469, at *3 (E.D.N.Y. July 14, 2020) (noting that a process' sufficiency is "measured, for purposes of [a] due-process claim, against the U.S. Constitution—not state law . . . or another standard"); *Amaker v. Schiraldi*, No. 15-CV-04879, 2017 WL 4402443, at *10 (E.D.N.Y. Sept. 29, 2017) (observing, in reference to the Parole Board's alleged violation of New York State law, that "state law violations generally are matters for consideration by the state courts and do not become constitutional issues" (internal quotation marks omitted)), *aff'd*, 812 F. App'x 21 (2d Cir. 2020); *Holland v. City of New York*, 197 F. Supp. 3d 529, 548-49 (S.D.N.Y. 2016) ("It is well settled that a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law." (internal quotation marks omitted)); *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002).[13]

The due process claim pressed against the Served Defendants is, consequently, dismissed.

---

[13] Even if Plaintiff's complaints were actionable, the claims for relief would be dismissed because the issues fall within the realm of an Article 78 proceeding under New York State law, *see* N.Y. C.P.L.R. § 7803, and "[i]t is well established that the availability of Article 78 proceedings or state habeas proceedings provide meaningful post-deprivation remedies sufficient to defeat a due process claim." *Mathurin v. Broome Cty.*, No. 20-CV-00515, 2020 WL 4194415, at *5 (N.D.N.Y. June 25, 2020), *adopted by* 2020 WL 4192522 (N.D.N.Y. July 21, 2020); *see also Schultz v. Egan*, 103 F. App'x 437, 440-41 (2d Cir. 2004) (differentiating between claims based on the insufficiency of "established state procedures" and "random, unauthorized acts" that can be rectified by post-deprivation procedures).

D. <u>Fourteenth Amendment Equal Protection Claim</u>

The Fourteenth Amendment's equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *Santucci*, 2021 WL 76337, at *4 (internal quotation marks omitted). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [the Second Circuit] ha[s] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Lopes v. Westchester Cty.*, No. 18-CV-08205, 2020 WL 7029002, at *7 (S.D.N.Y. Nov. 30, 2020) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (alterations in original)). An equal protection claim exists in two varieties: (1) selective enforcement; or (2) class of one. *Id.* (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013)); *see also Marom v. Town of Greenburgh*, No. 18-CV-07637, 2020 WL 4891339, at *4 (S.D.N.Y. Aug. 19, 2020).

To proceed on a selective enforcement theory, plaintiffs "must plausibly allege that any selective treatment they experienced 'was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [them].'" *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (alteration in original)). As for a class of one theory, "the plaintiff must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Lopes*,

17

2020 WL 7029002, at *8 (quoting *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013)). While these theories require different levels of specificity as to comparators, Plaintiff must plead facts pertaining to comparable individuals under either regime. *See Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019) (explaining that a selective enforcement theory requires comparators with a "reasonably close resemblance" and that a class of one theory necessitates comparators with an "extremely high" level of similarity (internal quotation marks omitted)).[14]

Notwithstanding the additions Plaintiff made in the SAC, the Court concludes again that this claim for relief must be dismissed. Even if the Court found that Plaintiff pled plausibly all other elements, Plaintiff has not pled the existence of any comparators with the requisite specificity. (*See* Prior Ord. at 18-19). Rather, Plaintiff pled that he:

> was denied . . . equal protection as similar situated prisoners. All of the persons granted parole along with plaintiff in June of 2015, he was the only one still at Woodbourne . . . .

(SAC at 18; *see also* Opp. at 13 (complaining that "all the inmates who went" before the Parole Board in "June of 2015 were released")). While this revised allegation is different from what was stated previously, it is still conclusory and identifies comparators in the abstract—leaving the Court to speculate as to factors such as whether the purported comparators were sex offenders, incarcerated at Woodbourne or similar facilities, committed similar crimes, had been incarcerated for similar terms, or requested a medical procedure before being released. Because the Court cannot conclude that these comparators bear a "reasonably close resemblance" or have an

---

[14] Although the question of "whether two comparators are similarly situated is [generally] a factual issue that should be submitted to the jury," *Marom v. Town of Greenburgh*, No. 18-CV-07637, 2020 WL 978514, at *6 (S.D.N.Y. Feb. 28, 2020) (quoting *LTTR Home Care, LLC v. City of Mount Vernon Indus. Dev. Agency*, No. 17-CV-09885, 2019 WL 4274375, at *12 (S.D.N.Y. Sept. 10, 2019) (alteration in original)), on a Rule 12(b)(6) motion the Court "must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Vaher*, 916 F. Supp. 2d at 434 (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 697-98 (S.D.N.Y. 2011)).

"extremely high" level of similarity, the claim for relief must be dismissed. *See Lopes*, 2020 WL 7029002, at *8.

The equal protection claim is, accordingly, dismissed as to the Served Defendants.

    E.  <u>Unserved Defendants</u>

Having adjudicated the Served Defendants' motion to dismiss, seven other Defendants—who have neither been served nor appeared—remain: (1) the Board; (2) Whitbeck, Amsler, Elffied, Osborne, and Webster (collectively, "Board Members"); and (3) Watkins. In the interest of judicial economy, the Court considers now the viability of federal claims for relief against these parties.[15]

        i.  <u>The Board</u>

This Court held on June 18, 2020 that the Board "is an arm of the state" and, therefore, protected by Eleventh Amendment immunity. (Doc. 18 at 3). This fact has not changed. Any federal claims against the Board are, therefore, dismissed. 28 U.S.C. § 1915(e)(2)(B)(iii).

        ii.  <u>The Board Members</u>

With respect to the Board Members, there are two separate bases for dismissing these individuals, which the Court now adopts.

First, Plaintiff provides absolutely no detail about these individuals apart from the fact that they sit on the Board; otherwise, he complains that the Board writ large violated his rights. (*See* SAC at 3, 5, 11-17). Failing to explain what each Board Member did to violate Plaintiff's rights is

---

[15] Federal Rule of Civil Procedure 4(m) provides, in pertinent part, that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Notwithstanding the Court's attempts to secure service on one or more of the Unserved Defendants (Doc. 18; Doc. 31), Plaintiff has never asked for an extension of time within which to serve these parties. The Court does not, however, dismiss the Unserved Defendants because of Plaintiff's failure to effectuate service in compliance with Rule 4(m). *See Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012) ("[A] district court abuses its discretion when, among other things, it dismisses a complaint *sua sponte* for lack of service without first giving notice to the plaintiff and providing an opportunity for her to show good cause for the failure to effect timely service.").

fatal to any claim under 42 U.S.C. § 1983 because such allegations rely on impermissible group pleading. *See Knight v. Koenigsmann*, No. 18-CV-07172, 2019 WL 2615977, at *7 (S.D.N.Y. June 26, 2019) (explaining that "[a] complaint that lumps . . . defendants together . . . and provides no factual basis to distinguish their conduct fails to satisfy [Rule 8]" (quoting *Tracey v. City of Geneva*, No. 17-CV-06567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018) (alterations in original))); *Johnson v. City of New York*, No. 15-CV-08195, 2017 WL 2312924, at *10 (S.D.N.Y. May 26, 2017) ("As a corollary to the personal-involvement rule, complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'" (quoting *Adamou v. Cty. of Spotsylvania, Va.*, No. 12-CV-07789, 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016))); *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015) ("Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations."), *vacated in part on other grounds*, 655 F. App'x 25 (2d Cir. 2016); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (explaining that liability requires that each defendant, by their "own individual actions," must violate the Constitution (quoting *Iqbal*, 556 U.S. at 676)).

Second, even if Plaintiff did not engage in group pleading, he simply fails to state a claim under 42 U.S.C. § 1983 against the Board Members. Plaintiff pled specifically that he proceeds:

> against the Board of Examiners Sex Offenders for (1) denying him Due Process (2) not following its guidelines outlined in Correction Law 168 (3) inaccurately assessing his SORA security level and misleading the Court and (4) creat[ing] a policy or the lack of such policy which contributed to his not being released.

(SAC at 5). Plaintiff's core objection, as emphasized elsewhere in the pleading, is that the Board misapplied New York State law in making its recommendation and, in doing so, violated Plaintiff's

Fourteenth Amendment right to procedural due process. (*See id*. at 11-17 (outlining how the Board, according to Plaintiff, should have determined his sex offender level based on applicable New York State law)). Even assuming that Plaintiff had a protected liberty interest in not being assigned a higher sex offender level than appropriate under state law, nothing in the pleading suggests that he lacked procedural safeguards. As one court observed:

> The SORA provides an elaborate procedural scheme for making and challenging sex offender level designations. Once the Board of Examiners of Sex Offenders makes a recommendation regarding the appropriate level to be assigned the matter is remitted to the sentencing court to make the actual determination. Prior to that determination the offender is provided notification of the recommendation and an opportunity to be heard, with counsel to be assigned in the appropriate circumstances. Once the designation is made by the sentencing court, the offender can then appeal the determination. The SORA procedures thus provided plaintiff with a meaningful opportunity to be heard regarding his classification both prior to and after that determination was made, and plaintiff makes no claim that he was denied the use of these procedures. It seems clear that the availability of these procedural safeguards satisfies the Fourteenth Amendment's procedural due process requirements and demonstrates that plaintiff's due process claim lacks merit.

*Fowlkes v. Parker*, No. 08-CV-01198, 2010 WL 5490739, at *8 (N.D.N.Y. Dec. 9, 2010) (internal citations omitted), *adopted by* 2011 WL 13726 (N.D.N.Y. Jan. 4, 2011). The Court adopts this logic *in toto*; indeed, its conclusion is even more potent on this particular set of allegations. Specifically, Plaintiff pled that he was represented by counsel and that the appellate court lowered his sex offender level. (*See, e.g.*, SAC at 7 ("Plaintiff, nor his assigned counsel . . . ."), 15 ("On March 21, 2017, the Appellate Division unanimously modified his SORA level . . . .")); *see also Williams*, 49 N.Y.S.3d at 672 ("Order . . . which adjudicated defendant a level three sexually

violent offender . . . unanimously modified . . . reducing the adjudication from level three to level two . . . ."). In other words, Plaintiff actually pled that the process worked.[16]

The federal claims against the Board Members are thus dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### iii.   Whitbeck

The final Defendant to be considered is Watkins. Watkins' role in this fact pattern consists of: (1) speaking with Plaintiff in late 2015 about his attempts to find Plaintiff proper housing; (2) notifying Plaintiff in February 2016 that suitable housing had been found; (3) speaking with Plaintiff in May, June, and July 2016, regarding attempts to effectuate Plaintiff's release; (4) stating that Plaintiff "should have been released;" and (5) not answering three of Plaintiff's phone calls at some point. (SAC at 10-11). Conspicuously, however, Plaintiff concedes that Watkins "continuously" worked to secure his release. (*Id*. at 18).

Accepting all of the foregoing as true, none of the federal claims for relief can proceed against Watkins for the reasons already addressed herein. Insofar as the First Amendment is concerned, there is no suggestion that Watkins knew about Plaintiff's requested surgery; and even if Watkins were aware of it—and it qualified as a protected activity—Watkins' actions embody the polar opposite of adverse action. With respect to the Eighth Amendment, that claim must fail on any fact pattern because Plaintiff cannot claim he was incarcerated beyond his maximum

---

[16] The Appellate Division "agree[d] with the" calculation of Plaintiff's sex offender level. *Williams*, 49 N.Y.S. 3d at 674. That court decided, however, to use its discretion and grant a downward departure for Plaintiff's sex offender level. *Id*. at 673. The Appellate Division explained, in pertinent part, that "[i]n this case, the [risk assessment instrument], by scoring [Williams] for his actions and characteristics from 30 years ago, as it was designed to do, fails to provide a complete picture of the extraordinary changes that [he] has made while incarcerated." *Id*. at 675. To the extent that Plaintiff may intend to proceed against the Board Members for their application or misapplication of New York State law, violations of state law—as discussed previously—are not bases for federal claims. *See, e.g.*, *Russell*, 910 F.2d at 78 n.1; *Pollnow*, 757 F.2d at 501; *Holland*, 197 F. Supp. 3d at 548-49.

sentence. As for the Fourteenth Amendment claims, those claims must fail because Plaintiff has not pled that Watkins treated him differently from anybody else, the existence of specific comparators, that Watkins had authority to effectuate Plaintiff's release, or that Watkins took any action of any kind to deprive Plaintiff of a protected liberty interest. Indeed, it appears that Watkins—like Foster—was an advocate for Plaintiff's release.

The federal claims against Watkins are, consequently, dismissed for failure to state a claim upon which may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

iv.   State Law Claims

Having dismissed all the claims against the Unserved Defendants over which this Court has original jurisdiction, the Court declines to exercise jurisdiction over any outstanding state law claims against them. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("Of course, a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction."); *Offor v. Mercy Med. Ctr.*, No. 17-CV-01872, 2018 WL 2947971, at *7 (S.D.N.Y. May 31, 2018) ("A federal district court may decline to exercise supplemental jurisdiction over pendent state law claims when it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))).

Any state law claims Plaintiff wishes to pursue against the Unserved Defendants are, accordingly, dismissed without prejudice to refiling in the proper forum.

## CONCLUSION

For the foregoing reasons: (1) the Served Defendants' motion to dismiss all claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is GRANTED; (2) all federal claims against the Unserved Defendants are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii); and (3) any state law claims against the Unserved Defendants are dismissed without prejudice to refiling in the proper forum.

Although "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint," it is "not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *see also Riddick v. Christine*, No. 21-CV-04277, 2021 WL 4122893, at *3 (E.D.N.Y. Sept. 8, 2021) ("[G]iven that the deficiency . . . is substantive . . . leave to amend would be futile."). Here, all claims against the Served Defendants and any federal claims against the Unserved Defendants are dismissed with prejudice because any amendment would be futile.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 44, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:   White Plains, New York
         January 18, 2022

_____
PHILIP M. HALPERN
United States District Judge

24